UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Michael Zellweger, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 17 CV 50195 |
|  | ) | Magistrate Judge Iain D. Johnston |
| Nancy A. Berryhill, Acting | ) |  |
| Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

# MEMORANDUM OPINION AND ORDER

Plaintiff Michael Zellweger brings this action under 42 U.S.C. § 405(g), seeking reversal and remand of the Commissioner of Social Security's denial of his claim for social security disability benefits. Once again, despite this Court's doubts that a claimant is disabled, after reviewing the administrative records and parties' briefs, this Court is required to remand the Commissioner's decision because of an insufficiently developed decision. The Court understands the overwhelming work load at the administrative level. But if administrative law judges would simply discharge their duties properly, the cases would not boomerang back to them for a redo – a process that only takes more time and causes the government to pay out thousands of dollars in fees to claimants' counsel. This pattern will continue until either the Commissioner makes changes to the system or the Seventh Circuit relaxes the harmless error and *Chenery* doctrines in Social Security appeals.

# I. BACKGROUND

**A. Procedural History**

On June 7, 2013, Plaintiff filed an application for Disability Insurance Benefits ("DIB") alleging that he became disabled on October 22, 2008.[1] R. 69. He alleged a myriad of disabling conditions: back and neck injuries that had required fusion surgery; carpal tunnel syndrome; pain and limited movement in his shoulders; tinnitus; moderate to severe pain in his legs, arms, hands, neck, and back; diabetes; depression; anxiety; and arthritis. R. 64, 82, 174. After his application was denied initially and upon reconsideration, Plaintiff requested a hearing. R. 69, 77-87, 89-90. An administrative law judge ("ALJ") conducted a hearing on February 25, 2016, where Plaintiff (represented by counsel), a medical expert ("ME"), and a vocational expert ("VE") all testified. R. 31-63. Two days before the hearing, Plaintiff amended his alleged disability onset date to August 28, 2013, which corresponded to a cervical MRI that, according to Plaintiff, "showed multiple pathology." R. 243-44; *see also* R. 17, 34-35.

In a March 21, 2016 written decision, the ALJ denied Plaintiff's request for disability benefits. R. 14-30. In doing so, the ALJ applied the five-step sequential evaluation process required by 20 C.F.R. § 404.1520. R. 18-19. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from his amended alleged onset date, August 28, 2013, through his date last insured ("DLI"), September 30, 2013. R. 19. At step two, the ALJ found that Plaintiff had the following severe impairments through the DLI: cervical and lumbar degenerative disc disease, diabetes, and carpal tunnel syndrome. *Id.* At step three, the ALJ determined that, through the DLI, Plaintiff did not have any impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listing of

---

[1] This was Plaintiff's second DIB application. He had filed another one in November 2009, which resulted in a finding that he was disabled from October 22, 2008 through July 23, 2010. R. 65, 170-71, 243.

Impairments"). R. 20. At steps four and five, the ALJ concluded that although Plaintiff could not have performed any of his past relevant work through the DLI, he could have performed other jobs that existed in significant numbers in the national economy. R. 24-26. Thus, the ALJ found that Plaintiff was not disabled from August 28, 2013 through September 30, 2013. R. 26. After the Appeals Council denied review of the ALJ's decision, it became the final decision of the Commissioner and, thus, reviewable by this Court. R. 1-5; *see* 42 U.S.C. § 405(g); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### B. Relevant Medical History

The relevant medical history comes primarily from the June–September 2013 time frame. On June 19, 2013, Plaintiff visited his primary care doctor, Dr. Michael Merry, seeking a referral for shoulder pain. R. 41-42, 451. At this visit, Dr. Merry's examination showed, among other things, obesity, "bilateral shoulder pain with restricted range of movements in all aspects" that was "likely related to [Plaintiff's] rotator cuff," and "[n]ormal muscle mass, strength and tone" with "[n]o signs of wasting or muscle loss." R. 454. Dr. Merry referred Plaintiff to the orthopedics department for his musculoskeletal complaints. R. 455. Less than a week later, Plaintiff presented to Dr. John Gluscic for his shoulder pain. R. 456-58. Plaintiff reported radiating shoulder, neck, and back pain and, specifically, radicular pain from his shoulder through his arm to his fifth finger (primarily), with intermittent tingling. R. 458.

In early July 2013, Plaintiff presented to Dr. Kevin Draxinger for follow up regarding his neck and shoulder pain. R. 461-63. At this visit, Dr. Draxinger noted the presence of some cervical degeneration. R. 463. On August 23, 2013, Plaintiff presented again to Dr. Draxinger for follow up on his bilateral shoulder pain. R. 464. Plaintiff reported "aching across the back of the shoulder [] going down his arms" and that "[a]t times he cannot move his left arm." R. 466. A physical

3

examination revealed that lateral rotation and bending of the neck was restricted by approximately 20 percent. *Id.* Dr. Draxinger's impression was that Plaintiff had cervical degeneration status post previous surgery[2] for possibly adjacent segment disease and bilateral rotator cuff tendonitis, and he ordered an MRI for Plaintiff's cervical spine. *Id.*

On August 28, 2013, Plaintiff had a cervical MRI taken, which yielded unremarkable results except at the C5-C7 levels. R. 363-64. Dr. Draxinger subsequently interpreted the MRI as showing a disk bulge or herniation at the C5-C6 level. R. 367. Dr. Draxinger then referred Plaintiff to neurosurgeon Dr. M. Marc Soriano for further consultation. R. 57, 366-67, 549. Dr. Soriano examined Plaintiff in September 2013. R. 549. He interpreted the August 2013 cervical MRI as showing "some transitional degenerative disc disease in the cervical spine above" Plaintiff's C6-C7 fusion. *Id.* He also noted Plaintiff's complaints of "numbness around the C7 spinous process and across both trapezius muscles where he points" and bad pain when he reaches out. *Id.* Nonetheless, Dr. Soriano's examination revealed "completely normal" results for Plaintiff's neck and shoulder range of motion and Plaintiff's "motor, sensory and reflex exams." *Id.*

## II. LEGAL STANDARD

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Accordingly, the Court cannot

---

[2] Plaintiff had previously undergone cervical fusion at the C6-C7 level in 2007. R. 41, 649.

4

overturn the Commissioner's decision "by reconsidering facts or evidence, or by making independent credibility determinations." *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

At the same time, the Court's review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). If the Commissioner's decision "lacks evidentiary support or an adequate discussion of the issues," then the Court must remand the matter. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Moreover, a reviewing court must "conduct a critical review of the evidence before affirming the Commissioner's decision." *Id.* (internal quotations omitted). "Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion." *Edmonson v. Colvin*, No. 14 CV 50135, 2016 WL 946973, at *2 (N.D. Ill. Mar. 14, 2016). The reviewing court cannot build the requisite logical bridge between the evidence and the ALJ's conclusions on behalf of the ALJ or the Commissioner. *Id.*

### III. DISCUSSION

Plaintiff argues that remand is required because the ALJ failed to adequately analyze whether his cervical degenerative disc disease meets the criteria of Listing 1.04A. In response, the Government contends that the ALJ's Listing 1.04A analysis was sufficient and, even if not, any error is harmless because Plaintiff cannot establish that his impairments meet Listing 1.04A.

**A. The Adequacy of the ALJ's Listing Analysis**

At step three of the sequential evaluation process, the ALJ determines whether a claimant's impairments meet or equal "an impairment found in the Listing of Impairments"; if so, the "claimant is presumptively eligible for benefits." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); 20 C.F.R. § 404.1520(a)(4)(iii). "In considering whether a claimant's condition meets or equals a listed impairment, the ALJ must discuss the listing by name and offer more than [a]

5

perfunctory analysis of the listing." *Minnick*, 775 F.3d at 935 (internal quotations omitted). As with any other conclusion, the ALJ must build a logical bridge from the evidence to his conclusion that a claimant does not meet a listing. *See, e.g.*, *id.* at 936; *Plessinger v. Berryhill*, 900 F.3d 909, 917 (7th Cir. 2018).

Listing 1.04 describes spinal disorders, including degenerative disc disease, that result in compromise of a nerve root or the spinal cord. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04. Subsection A of Listing 1.04 further requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss[.]"[3] *Id.* § 1.04A. The ALJ found that Plaintiff's cervical degenerative disc disease, which qualifies as a spinal disorder under Listing 1.04, constituted a severe impairment. *Id.* § 1.04; R. 19. Then, as part of his step-three analysis, the ALJ stated that he gave special consideration to Listing 1.04, but "the record [did] not establish the presence of the findings needed to satisfy the requirements of" this listing. R. 20. The remainder of the ALJ's analysis of Listing 1.04 was as follows:

> As discussed more below, medical records establish lumbar and cervical degenerative disc disease, with neurological involvement, status post surgery. However, the criteria of listing 1.04 are not satisfied in this case. For example, during an examination on June 19, 2013, the claimant displayed obesity, right lateral epicondylitis, and limited shoulder range of motion, but normal functioning otherwise.

*Id.* (record citations omitted).

This analysis, though, gives the Court no inkling as to *which* of Listing 1.04A's requirements were not purportedly satisfied. *See Plessinger*, 900 F.3d at 917 (finding an ALJ's

---

[3] If the spinal disorder involves the lower back, the claimant must also show "positive straight-leg raising test (sitting and supine)" to meet Listing 1.04A. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04A. Plaintiff, however, does not contend that Listing 1.04A is met by his lumbar, i.e., lower back, degenerative disc disease. Dkt. #11 at 10 & n.2.

6

listing analysis insufficient where it did not allow the court to undertake a "meaningful review" of the finding). In fact, because the ALJ did not identify subsection A of Listing 1.04 or mention any criteria unique to that subsection, the Court cannot even be sure that the ALJ considered it. R. 20. But even giving the ALJ the benefit of the doubt, his mere reference to a single examination where Plaintiff displayed "normal functioning" provides no insight into why the ALJ believed that the criteria of Listing 1.04A were not met. Did Plaintiff's "normal functioning" mean that he did not exhibit nerve root compression? Or that Plaintiff did not prove one of the required characteristics of nerve root compression—neuro-anatomic distribution of pain, limitation of motion of the spine, or motor loss accompanied by sensory or reflex loss? Or that he failed to prove all these characteristics?

The ALJ's analysis is "the very type of perfunctory analysis" that the Seventh Circuit has "repeatedly found inadequate to dismiss an impairment as not meeting or equaling a Listing." *Minnick*, 775 F.3d at 935-36. Indeed, it is even more cursory than the listing analysis that the Seventh Circuit found inadequate in *Minnick*, which at least identified by name the criteria that were not proven, such as the nerve root compression required by subsection A. *Id.* at 935; *see also Kastner v. Astrue*, 697 F.3d 642, 647 (7th Cir. 2012) (finding a Listing 1.04A analysis cursory where it simply stated that the claimant "did not display limitation of motion of the spine as anticipated by section 1.04A"). Here, the ALJ did not even do that.

Nonetheless, when reviewing the adequacy of an ALJ's listing analysis, the Court must consider the ALJ's decision as a whole. *See Summers v. Colvin*, 634 F. App'x 590, 593 (7th Cir. 2016). After concluding his step-three analysis, the ALJ evaluated Plaintiff's residual functional capacity ("RFC") and the credibility of his symptom statements. R. 20-21, 24. In doing so, the ALJ discussed Plaintiff's allegations and hearing testimony, various medical records, and the

7

medical opinion evidence in the record. R. 21-24. The Government contends that because this later discussion analyzed "the evidence relevant to [the ALJ's] listing determination," his Listing 1.04A "assessment was sufficient and appropriate." Dkt. #16 at 3, 5.

The Court disagrees. The ALJ's discussion of the evidence in connection with his RFC and credibility evaluations did not provide any further explanation as to why he concluded that Listing 1.04A was not met. *Compare Summers*, 634 F. App'x at 593 (finding that the brevity of the ALJ's listing analysis was not problematic because the ALJ's decision later "explained why the record did not establish the criteria required to satisfy Listing 1.04"). Nowhere did the ALJ link any of the evidence he discussed to the Listing 1.04A criteria. R. 21-24. To the contrary, the ALJ did not refer to the criteria of Listing 1.04 (or subsection A) anywhere in his decision, and he only referred to Listing 1.04 by name in one portion of his decision: his step-three analysis, which the Court has already deemed inadequate. R. 17-26. Put simply, there is no indication that the ALJ's discussion of the evidence in connection with his RFC and credibility evaluations was intended to support his Listing 1.04A analysis. *See Horner v. Berryhill*, No. 17 C 7586, 2018 WL 3920660, at *2 (N.D. Ill. Aug. 16, 2018) (rejecting the Government's argument that any error in the ALJ's listing analysis was cured by a later discussion of the relevant evidence because that discussion did not "identify the requirements of the listing, let alone explain why plaintiff does not meet them"); *see also Edmonson*, 2016 WL 946973, at *4 (explaining that the ALJ's failure to connect her evidentiary observations to the requirements of Listing 1.04A left it unsure as to "whether the ALJ was aware of [these requirements] when she made these observations"); *Tucker v. Colvin*, No. 14 CV 50021, 2015 WL 6736700, at *4 (N.D. Ill. Nov. 4, 2015) (finding that it could not determine whether the ALJ implicitly considered the evidence discussed in its RFC

discussion in making its Listing 1.04A determination because the ALJ "never connected the evidence back to the specific 1.04(A) requirements").

The Government's brief identifies evidence that it contends is both relevant to the ALJ's listing determination and supportive of the ALJ's conclusion that Plaintiff did not meet Listing 1.04A, including the opinion of the ME, Dr. Gilberto Munoz, who opined that Plaintiff did not meet or equal any listed impairment. Dkt. #16 at 3-7; *see* R. 51. But the Court's review on appeal is confined to the reasons articulated by the ALJ in his decision. *Jelinek v. Astrue*, 662 F.3d 805, 811-12 (7th Cir. 2012). And nothing in the ALJ's decision suggests that his discussion of the evidence in connection with his RFC and credibility evaluations had any impact or relation to his conclusion that Plaintiff did not meet Listing 1.04A. Similarly, the ALJ did not indicate that his Listing 1.04A analysis depended upon Dr. Munoz's opinion in any way. For one thing, the ALJ's listing analysis did not mention or cite to Dr. Munoz's testimony. R. 20. Indeed, the sole medical record that the ALJ referenced in finding Listing 1.04 not met—Dr. Merry's June 2013 examination—was not even mentioned by Dr. Munoz. R. 20, 51-57. Moreover, although the ALJ gave "great weight" to Dr. Munoz's assessment regarding *Plaintiff's RFC*, he did not discuss or otherwise express his reliance on Dr. Munoz's testimony about Plaintiff's failure to satisfy any listings. R. 24.

The ALJ had a duty to build an accurate and logical bridge between the evidence and his conclusion that Plaintiff's impairments did not meet Listing 1.04A. *See Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *Lemay v. Berryhill*, No. 17 CV 50110, 2018 WL 5078384, at *4 (N.D. Ill. Oct. 18, 2018). He did not do so, and neither this Court nor the Government attorneys defending the decision can supply that bridge for the ALJ. *See Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012); *Edmonson*, 2016 WL 946973, at *2. This failure requires remand unless it was

harmless. *See, e.g.*, *Nash v. Colvin*, No. 15 CV 50019, 2016 WL 4798957, at *5 (N.D. Ill. Sept. 14, 2016); *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("[A]dministrative error may be harmless."). The Court turns to that issue next.

**B. Harmless Error**

The Government also contends that even if the ALJ's Listing 1.04A analysis was inadequate, this error was harmless because the medical evidence demonstrates that the requirements of Listing 1.04A have not been met. Dkt. #16 at 7-8. Specifically, the Government argues that Plaintiff does not identify any evidence showing motor loss or any evidence contradicting Dr. Munoz's opinion that Plaintiff does not meet any listings. *Id.* at 8.

Although the doctrine of harmless error generally applies to judicial review of administrative decisions, *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010), it is unclear "how much leeway there is for application of the harmless error doctrine" where the ALJ's error is a cursory listing analysis. *Edmonson*, 2016 WL 946973, at *5. This is because Seventh Circuit cases finding that an ALJ's listing analysis is cursory have not discussed "whether (and how) the harmless error doctrine should apply in light of" the *Chenery* doctrine, which forbids the Government from advancing grounds on appeal not relied upon by the ALJ. *Id.* at *4-5. Nonetheless, this Court has found that when an ALJ's listing analysis is inadequate, there is "a limited opening for the harmless error doctrine." *Dock v. Berryhill*, No. 16 CV 50277, 2017 WL 5293901, at *5 (N.D. Ill. Nov. 13, 2017). In *Dock*, although the ALJ's Listing 1.04A analysis was inadequate, several facts supported finding the error harmless in that case: (1) the claimant had failed to coherently explain why the requirements of Listing 1.04A had been met or equaled and had conceded the absence of a listing requirement (nerve root impingement); (2) no medical expert had opined that the claimant met or equaled the listing requirements; whereas, the ALJ had relied

upon a medical expert to conclude that the listing had not been met; and (3) during the lengthy administrative proceedings, the claimant had ignored the issue of whether the ALJ gave sufficient attention to the listings. *Id.* at *5-6.

As in *Dock*, there is no medical opinion that Plaintiff met Listing 1.04A, and an ME (Dr. Munoz) testified that Plaintiff did not meet any listings. R. 51. At the same time, though, there is no indication that the ALJ actually relied upon this testimony to determine that Plaintiff did not meet Listing 1.04A. R. 20, 24. Also, unlike in *Dock*, Plaintiff here specifically mentioned Listing 1.04 in his pre-hearing brief and then, after the ALJ's unfavorable decision, argued to the Appeals Council that the ALJ failed to consider whether his cervical condition satisfied Listing 1.04A. R. 243-46. Plaintiff also questioned Dr. Munoz about whether certain symptoms were consistent with nerve root compression (one of the requirements of Listing 1.04A). R. 56; *contra Dock,* 2017 WL 5293901, at *6 (noting that the claimant did not raise the Listing 1.04 issue in his pre-hearing or Appeals Council briefs and did not broach the topic when questioning the ME at the hearing). Furthermore, Plaintiff's briefing appears to explain why Listing 1.04A is met more coherently than the claimant in *Dock* did. In his opening brief, Plaintiff identified the relevant criteria of Listing 1.04A, as well as testimonial and medical evidence that purportedly showed that the listing is met, but that the ALJ failed to consider. Dkt. #11 at 9-10. He then, albeit in a conclusory fashion, asserted that the evidence satisfied the various criteria of Listing 1.04A. *Id.* at 10-11 ("[P]laintiff's complaints to various physician[s] were consistent with nerve root compression, he had radiating pain down his arms consistent with neuro-anatomic distribution of pain, he had limited range of motion in his neck, and numbness in his hand/fingers consistent with sensory loss."). Although he should have done so in his opening brief, Plaintiff's reply then took each separate requirement

of Listing 1.04A and laid out the evidence that purportedly meets each requirement. Dkt. #17 at 5-6.

Because the differences between the circumstances here and in *Dock* outweigh their similarities, the Court does not believe this case falls within the "limited opening" for harmless error recognized by *Dock*. Moreover, Plaintiff has identified evidence that the ALJ did not explicitly reject and that, at least to the Court's layperson eyes, might establish at least some of the requirements of Listing 1.04A. *See Minnick*, 775 F.3d at 935-36 (remanding a cursory Listing 1.04 analysis where the ALJ failed to acknowledge aspects of the record that could indicate nerve root compression and that, when paired with other evidence, may have shown that the claimant satisfied Listing 1.04A); *Tucker*, 2015 WL 6736700, at *6 (identifying the ALJ's failure to address contrary evidence as one reason for not finding the ALJ's inadequate listing analysis harmless).

For example, Plaintiff refers to the August 23, 2013 physical examination that reported his lateral rotation and bending of his neck to be restricted approximately 20 percent, which would arguably constitute "limitation of motion of the spine" as required by Listing 1.04A. R. 466. Although the ALJ acknowledged this examination finding, he did not give any reason for rejecting it (if he in fact did so). R. 22; *see Lemay*, 2018 WL 5078384, at *4 ("Equally as important as the evidence that is considered, an ALJ must explain why contrary evidence does not persuade the decision."). Plaintiff has also identified instances in which he complained of numbness or tingling, arm pain, and an inability to move the arm. *See, e.g.*, R. 458 (reporting radiating shoulder, neck, and back pain and "radicular pain that comes all [the] way down the shoulder, all the way into the hand and involves the 5th finger primarily" with intermittent tingling), R. 466 (reporting that "aching across the back of the shoulder [] going down his arms" and that "[a]t times he cannot move his left arm"), R. 549 (reporting "numbness around the C7 spinous process and across both

trapezius muscles where he points"). Based on the testimony of Dr. Munoz, these symptoms could evidence nerve root compression, another requirement of Listing 1.04A. R. 56. True, as the Government points out, Plaintiff has not challenged the ALJ's finding that his allegations were not entirely or fully credible. R. 21, 24; Dkt. #16 at 7. But in making this finding, the ALJ implied that he found at least some of Plaintiff's allegations credible. *See Cullinan v. Berryhill*, 878 F.3d 598, 605 (7th Cir. 2017) (a "not entirely credible" finding implies that testimony was "at least partially credible"). And it is unclear whether the ALJ found Plaintiff's allegations related to possible nerve root compression credible or not credible.

To support its harmless error argument, the Government points to Dr. Munoz's uncontradicted testimony that Plaintiff did not meet any listings and argues that Plaintiff has not presented any evidence of motor loss. Dkt. #16 at 7-8. But because the Court has no clue how the ALJ viewed Dr. Munoz's testimony about the listings, it cannot be sure that the ALJ would rely upon it (or similar testimony) to support its listing analysis when re-evaluating the evidence. *See McKinzey*, 641 F.3d at 892 (explaining that remand is not required when the court is "convinced that the ALJ will reach the same result" on remand). As for Plaintiff's alleged failure to identify evidence showing motor loss, Plaintiff has identified complaints of radicular pain in his shoulder, hand, and finger with intermittent tingling, as well as an alleged inability to move his arm at times. R. 458, 466. The Court is hesitant to interpret this evidence as either satisfying the motor loss component of Listing 1.04A or not, and it believes that task is more properly left to the ALJ (perhaps with the assistance of a medical expert) in the first place.

This is not to say that the Court believes that Plaintiff will ultimately prove that Listing 1.04A is met. The Court has doubts that Plaintiff is disabled. But doubts about the ultimate viability of Plaintiff's claim do not warrant giving the ALJ's inadequate listing analysis a free pass;

13

the Court can do so only if it has "great confidence" that the result would be the same on remand. *See McKinzey*, 641 F.3d at 892; *Tucker*, 2015 WL 6736700, at *4, 6. And in these circumstances, the Court is not so confident. *See also Nash*, 2016 WL 4798957, at *5 (requiring remand due to the ALJ's failure to build the requisite bridge for a listings analysis even though "the record [was] replete with evidence from which a strong case for denying benefits could be made").

Remand is required so that the ALJ can build the requisite accurate and logical bridge from the evidence to his conclusions about whether Plaintiff meets Listing 1.04A (or any other listing). If the ALJ finds that Plaintiff does not meet Listing 1.04A or any other listing, he should explain which requirement or requirements have not been met, and he should ensure that he addresses any evidence in the record contrary to his findings. The ALJ should also explicitly indicate whether, and to what extent, he relies upon the opinion of any physician or medical expert in coming to his listings conclusions.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion is granted; the Government's motion is denied; and the decision of the ALJ is reversed and remanded for further review.

Entered: December 17, 2018          By:_____

Iain D. Johnston
U.S. Magistrate Judge